## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MARVIN ALEXANDER,

                    Plaintiff,

         v.

BCI ACRYLIC, INC.,

                  Defendant.

No. 23-cv-01921

Judge John F. Kness

## MEMORANDUM OPINION AND ORDER

Plaintiff Marvin Alexander, who is African American, claims that he was subject to racial discrimination, harassment, and retaliation while working for Defendant BCI Acrylic, Inc. ("BCI"). Plaintiff alleges that while in a bathroom stall at work, an unidentified individual walked into the bathroom and said, "there is a n*gger in here."[1] Plaintiff says he suffered race-based discrimination, harassment, and retaliation from this incident and his efforts to report it. Defendant seeks summary judgment on all claims, arguing that Plaintiff did not suffer an adverse employment action, was not treated differently on account of his race, and that Defendant conducted a full investigation. For the reasons that follow, Defendant is entitled to summary judgment on all counts.

## I.  BACKGROUND

Plaintiff Marvin Alexander began working at Defendant's Libertyville, Illinois

---

[1] This is Plaintiff's formulation of the alleged statement. (*See* Dkt. 1 ¶ 28; Dkt. 40 ¶ 8.)

location on November 16, 2021 as a third shift production thermoforming operator. (Dkt. 40 ¶¶ 2–3.) On February 16, 2022, Plaintiff's job title was changed to third shift "product quality technician" and Plaintiff received a $1.50 per hour pay increase. (*Id.* ¶ 5.) Plaintiff's supervising manager was Alan Velazquez ("Velazquez"). (*Id.* ¶ 10.) Plaintiff claims that he was the only African-American employee in his department, that he heard his Hispanic co-workers make racial and derogatory comments, such as using the N-word, and that on one instance, while Plaintiff was in the restroom, Plaintiff heard an employee walk in and say, "There is a n*gger in here." (Dkt. 1 ¶¶ 16–19, 28.) During Plaintiff's performance review in February 2022, however, Plaintiff did not report that he was subjected to or heard racial or derogatory comments from coworkers. (Dkt. 40 ¶¶ 19–20.)

On September 12, 2022, Plaintiff made a report to Defendant's Director of Human Resources ("HR"), Lois Lloyd ("Lloyd"), describing the bathroom incident that Plaintiff claims occurred a few weeks earlier, on August 25, 2022.[2] (Dkt. 40 ¶ 8.) Plaintiff could not provide the name of the individual who allegedly made the statement in the bathroom, identify any individuals who heard the incident, did not see the person in the bathroom, and never reported any incidents other than the bathroom incident. (*Id.* ¶¶ 8, 13–16.) Plaintiff initially reported the bathroom incident to his supervisor, Velazquez, who then reported it to his supervisor, Jose Tello ("Tello"), the same day. (*Id.* ¶ 25.) Tello made attempts to determine who made the alleged statement in the bathroom, but Plaintiff was unable to provide any

---

[2] Plaintiff is unsure of the exact date of the alleged bathroom incident, but he provided this date to HR. (Dkt. 40 ¶¶ 8, 60.)

information about the individual or who else was in the bathroom. (*Id.* ¶ 51.)

After Velazquez reported the bathroom incident to Tello, Tello failed to escalate the complaint to HR as required under Defendant's anti-harassment policy. (Dkt. 43 ¶ 8.) HR only found out about the bathroom incident after Plaintiff (not Tello) brought it to HR's attention. (Dkt. 34 at 140–41; Dkt 40 ¶ 25.) HR then conducted an investigation. (Dkt. 40 ¶¶ 37, 41–42.) HR's standard procedure is to speak to the complainant and ask for names of any witnesses. (*Id.* ¶ 56.) Lloyd spoke with Plaintiff, who was again unable to identify who was in the bathroom. (*Id.* ¶ 60.) Lloyd also spoke with Velazquez and Tello, and then reviewed video camera footage of the hallway near the bathroom to attempt to see when Plaintiff entered the bathroom and who else may have entered or left around the same time. (*Id.* ¶ 61.) Despite reviewing the video camera footage for the date provided by Plaintiff and for the surrounding days, Lloyd found no video evidence to corroborate Plaintiff's account. (*Id.* ¶¶ 61–62.)

On September 3, 2022, after the alleged bathroom incident but before the issue was brought to the attention of HR, Defendant eliminated the third production shift, and as a result, Plaintiff's job changed from "product quality technician" to "bandsaw operator." (*Id.* ¶¶ 5,7.) Plaintiff's pay rate remained the same. (*Id.* ¶ 7.) Plaintiff alleges that his role change constituted racial discrimination and retaliation. (Dkt. 39 at 7–8, 14.)

Plaintiff also alleges more general issues with his employment. He claims, for instance, that meetings were held only in Spanish and not explained to him in

English. (Dkt. 40 ¶ 28.) The parties dispute the extent to which meetings were held or information was conveyed in English. (*See id.*) The parties also dispute whether Plaintiff overheard Hispanic co-workers using the N-word around Plaintiff, (Dkt. 39 at 9), although Plaintiff cannot identify anyone who did so and says he did not report these incidents to his supervisor so as not to "make waves" as a new employee. (Dkt. 40 ¶¶ 11–12.) Further, Plaintiff argues that others were treated more favorably when they reported discrimination. (Dkt. 39 at 8–9.) For example, in a separate incident not involving Plaintiff, Lloyd testified that after an employee called another African American employee the N-word, the Defendant "probably fired the person who used the racial slur." (Dkt 34 at 139.) Plaintiff believes his investigation was not given the same treatment. (Dkt. 39 at 10–11.)

Plaintiff is collecting disability benefits after suffering a stroke (Dkt. 40 ¶ 69),[3] which Plaintiff argues was caused by the alleged discrimination. (Dkt. 39 at 14–15.) Plaintiff has presented no medical documentation to support that belief. (Dkt. 40 ¶ 69.)

Plaintiff filed the present four-count complaint on March 28, 2023. (Dkt. 1.) Plaintiff brings claims (Counts I, II) for race-based discrimination in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. (Dkt. 1 ¶¶ 37–46.) Plaintiff also brings claims (Counts III, IV) for race-based harassment and retaliation under Title VII. (*Id.* ¶¶ 47–62.) The parties conducted discovery, which is closed. (Dkts. 28,

---

[3] It is not clear from the Rule 56.1 statements whether Plaintiff is still employed by Defendant. (*Compare* Dkt. 40 ¶ 2 ("Plaintiff . . . was an employee of Defendant"), *with id.* ¶ 69 ("Plaintiff is still employed by Defendant . . . .").)

30.) Defendant now seeks summary judgment on all counts. (Dkt. 32.)

## II. STANDARD OF REVIEW

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the "put up or shut up moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (quotations omitted). All facts, and any inferences to be drawn from them, are viewed in the light most favorable the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

## III. DISCUSSION

### A. Race-Based Discrimination (Counts I, II)

In Counts I and II respectively, Plaintiff brings claims for race-based discrimination in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* (Dkt. 1 ¶¶ 37–46.) The legal analysis for discrimination claims under § 1981 and Title VII are identical, "so we merge our discussion of the two claims," *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499 (7th

5

Cir. 2017) (internal quotation omitted), and analyze both "under the framework governing Title VII claims." *Hallmon v. Sch. Dist. 89*, 911 F. Supp. 2d 690, 699 (N.D. Ill. 2012).

Under that framework, the Court asks "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race . . . caused the discharge or other adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). Although not required, one method a plaintiff may choose to pursue his claim is the "*McDonnell Douglas* 'burden-shifting framework.'" *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 368 (7th Cir. 2019) (quoting *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017)); *see also generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The *McDonnell Douglas* framework asks a plaintiff to show a prima facie case by demonstrating that they: (1) are a member of a protected class; (2) met the defendant's legitimate expectations; (3) suffered an adverse employment action; and (4) were treated less favorably than similarly situated employees not members of the protected class. *McDaniel*, 940 F.3d at 368.

If a plaintiff satisfies each element of their prima facie case, the burden shifts to the defendant "'to articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual.'" *Id.* (quoting *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 719–20 (7th Cir. 2018); *see also Wince v. CBRE, Inc.*, 66 F.4th 1033, 1040 (7th Cir. 2023). Even if a plaintiff fails to succeed under

*McDonnell Douglas*, the Court must assess the evidence "as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence." *Ortiz*, 834 F.3d at 765.

Plaintiff does not meet his burden under *McDonnell Douglas*. The parties agree that Plaintiff is a member of a protected class (African American) (Dkt. 6 ¶ 52) and do not dispute that Plaintiff met or exceeded Defendant's legitimate performance expectations. (Dkt. 39 at 6–7.)[4] As explained below, however, Plaintiff fails to show a prima facie case under *McDonnell Douglas* because the evidence, seen in the light most favorable to Plaintiff, precludes a finding that Plaintiff suffered an adverse employment action or was treated less favorably than similarly situated employees.

### 1. *Plaintiff Suffered No Adverse Employment Action*

Adverse employment actions "include a broad array of actions such as 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or some other action causing a significant change in benefits.'" *McKenzie v. Milwaukee Cnty.*, 381 F.3d 619, 625 (7th Cir. 2004) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). The adverse "employment action must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Id.* (quoting *Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002)). A lateral transfer

---

[4] The undisputed evidence, such as Plaintiff's employee review, indicates that Plaintiff met expectations and accordingly received a pay increase. (*See* Dkt. 34 at 165; Dkt. 40 ¶ 5.) On one occasion, Plaintiff received an "Employee Warning Notice" which states that Plaintiff "walked away when his supervision [sic] was giving him instructions regarding end of shift procedure." (Dkt. 34 at 168.) Plaintiff disputes part of this account, but in any event, Plaintiff was neither suspended nor docked any pay. (Dkt. 40 ¶ 36.) The Employee Warning Notice does not undermine the overall conclusion that Plaintiff met expectations.

within a company "rarely constitutes an adverse employment action." *Stapleton v. Nestle USA, Inc.*, No. 17 C 5589, 2024 U.S. Dist. LEXIS 60372, at *12 (N.D. Ill. Apr. 2, 2024). A transfer that "does not involve a demotion in form or substance[] cannot rise to the level of a materially adverse employment action. A transfer involving no reduction in pay and no more than a minor change in working conditions will not do, either." *Id.* (quoting *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996)).

Plaintiff argues that he suffered an adverse employment event because he was demoted after complaining to HR about the bathroom incident. (Dkt. 39 at 7.) According to Plaintiff, after a discussion with Lloyd, Plaintiff was demoted from his position as a third shift "product quality technician" and moved to a new job as a "band saw operator." (*Id.*; Dkt. 40 ¶ 7.)[5] Although Plaintiff admits that his pay rate remained the same, he argues that the band saw position was less desirable. (Dkt. 40 ¶ 7; Dkt. 39 at 8.)

Plaintiff's lateral job change was not an adverse employment action, and his subjective belief that he was demoted, without more, does not change that conclusion. For a demotion to constitute an adverse employment action, the reassignment "must involve 'significantly different responsibilities,'" and "changes such as reporting to a

---

[5] As described below, Plaintiff's timing belies the evidence in the record. In his Opposition, Plaintiff states that his alleged demotion occurred *after* speaking with HR. (Dkt. 39 at 7) ("Following his discussion with Ms. Lloyd, Plaintiff was demoted from his position in third shift to a different time and into the role of band saw operator from product quality technician.").) Plaintiff, however, appears to admit in his Rule 56.1 Response that that his job changed on September 3, 2022, before Plaintiff making a report to HR. (Dkt. 40 ¶¶ 7–8.) Plaintiff does not cite any evidence showing that the alleged demotion occurred after speaking with HR.

former subordinate or being given a different title are 'largely semantic' when there is no accompanying reduction in salary, benefits, or responsibility." *Stapleton*, 2024 U.S. Dist. LEXIS 60372 at *13–14 (citing *Flaherty v. Gas Rsch. Inst.*, 31 F.3d 451, 456 (7th Cir. 1994)). A transfer that merely "causes 'personal inconvenience' does not count as an adverse employment action." *Id.* at 14–15 (quoting *Flaherty*, at 31 F.3d 456). Plaintiff does not cite evidence that indicates the "band saw operator" role was a less distinguished title or was accompanied by significantly different responsibilities (Dkt. 39 at 7–8), and Plaintiff admits he received no reduction in pay. (Dkt. 40 ¶ 7.) Plaintiff also admits that Defendant's decision to eliminate the third production shift was a "business decision" and that Plaintiff never advised his supervisors that he suffered from any physical limitations which caused him difficulties working on the band saw. (Dkt. 40 ¶¶ 7, 46.)

Even if Plaintiff suffered an adverse employment action, Defendant provides a legitimate justification, and Plaintiff is unable to establish that the justification is pretextual. *See Wince v. CBRE, Inc.*, 66 F.4th 1033, 1040 (7th Cir. 2023). Defendant argues that the decision to eliminate the third shift and transfer Plaintiff to the band saw operator role was for business reasons and was unrelated to alleged bathroom incident because Defendant decided to eliminate the third shift at least a month before Plaintiff made his report to HR. (Dkt. 44 at 4.) Plaintiff disputes this but cites nothing in the record for support. (*See* Dkt. 39 at 8.) Upon review, the evidence in the record (*e.g.*, Dkt. 34 at 13 ¶¶ 10–11) confirms Defendants' position that it made plans to eliminate the third production shift before the bathroom incident and before

Plaintiff's report to HR. Plaintiff cites no evidence from which a jury could conclude otherwise. Defendant satisfies its burden to provide a legitimate justification for Plaintiff's job change, and Plaintiff is unable to establish that the justification is pretextual.

> 2. *Plaintiff Was Not Treated Less Favorably Than Similarly Situated Employees*

Plaintiff also fails to meet his burden to show that he was treated less favorably than similarly situated employees, who must be " 'directly comparable' in all material respects." *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 895 (7th Cir. 2018) (quoting *Reed v. Freedom Mortg.*, 869 F.3d 543, 549 (7th Cir. 2017)). This inquiry is "flexible, common-sense, and factual. It asks 'essentially, are there enough common features between the individuals to allow a meaningful comparison?' " *Coleman v. Donahoe*, 667 F.3d 835, 841 (7th Cir. 2012) (quoting *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007)). The similarly situated requirement was intended to "eliminate other possible explanatory variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable," namely, discriminatory or retaliatory animus. *Id.* at 846 (internal quotation marks omitted). Whether a comparator is similarly situated is "typically a question for the fact finder, unless, of course, the plaintiff has no evidence from which a reasonable fact finder could conclude that the plaintiff met his burden on this issue." *Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 958 (7th Cir. 2021) (internal quotation marks omitted).

Given the paucity of evidence cited by Plaintiff, no reasonable fact finder could

conclude that Plaintiff meets his burden to identify a similarly situated employee who received better treatment. If Plaintiff "present[s] no evidence concerning a similarly situated employee from which the district court could draw a comparison," Plaintiff makes "review under *McDonell Douglas* functionally impossible." *Igasaki*, 988 F.3d at 958.

Plaintiff argues in general that he would overhear Hispanic co-workers use the N-word around him, and that compared to others who made complaints to HR, Plaintiff was treated less favorably because his investigation was not given adequate attention. (Dkt. 39 at 9.) Although Plaintiff seeks to compare his situation to "previous HR investigations, including those of sexual harassment, sex-based discrimination, and race-based discrimination," Plaintiff's citations focus on the general approach HR took to investigations, an investigation into sexual harassment,[6] and an investigation that also concerned the N-word. (*Id*; Dkt 34 at 109, 139.) Regarding the latter, Plaintiff cites to Lloyd's deposition, who testified that in another incident (for which there were witnesses), an employee called an African American employee the N-word and Defendant "probably fired the person who used the racial slur." (Dkt 34 at 139.) In investigating that incident, HR spoke to the person

---

[6] Plaintiff cites to deposition testimony from Tello discussing an investigation into sexual harassment. (Dkt. 39 at 9; Dkt. 34 at 109.) The details on this investigation are sparse, (*see* Dkt. 34 at 109), and Plaintiff does not explain how this investigation is comparable other than by vaguely asserting that the protocols followed were different. (Dkt. 39 at 9.) Unlike Plaintiff's complaint, it appears there was no question as to the identity of the alleged perpetrator. (Dkt. 34 at 109.)

who brought the complaint and conducted interviews.[7] (*Id.*)

Plaintiff argues that his complaint was not treated as favorably because it did not initially or quickly make it to HR. (Dkt. 39 at 9.) Rather, Plaintiff reported the incident to his immediate supervisor, Alan Velazquez, Velazquez reported the incident to his supervisor, Jose Tello, and Tello failed to report the incident up the chain to HR, which only became aware of the bathroom incident after Plaintiff brought it to HR's attention. (Dkt. 34 at 140–41; Dkt 40 ¶ 25.) Plaintiff also states that once HR was aware of the issue, HR failed to fully investigate it by not talking to witnesses. (Dkt. 39 at 9.)

Plaintiff's effort at comparison is flawed by a fundamental, and undisputed, fact: neither Plaintiff nor any deponent can identify the alleged perpetrator of the bathroom incident. (Dkt. 40 ¶¶ 11, 13, 16, 51, 60.) In the incidents cited to by Plaintiff for comparison, Defendant *knew* through witnesses who to investigate. (*See, e.g.*, Dkt 34 at 139.) In contrast, Plaintiff cannot identify the name of the individual in the bathroom and is not even sure on what date the incident occurred. (Dkt. 40 ¶¶ 16, 60.)

Plaintiff's best argument that he was treated less favorably is that his complaint was not initially escalated to HR. Plaintiff, however, does not cite evidence in the record to show how quickly the other incidents were brought to HR's attention, rendering a comparison impossible. The undisputed evidence also shows Plaintiff's complaint was taken seriously when Lloyd conducted interviews and reviewed the

---

[7] Lloyd also mentions a second incident involving a slur against Hispanic workers at BCI, but she had even fewer details about that incident, concluding that she was "just not clear on that one." (Dkt. 34 at 139–40.)

relevant camera footage. (Dkt. 40 ¶¶ 61–64.) Plaintiff therefore fails his burden to show that he was treated less favorably than similarly situated employees.

### 3.    Holistic Evidence Approach

Because Plaintiff fails to show a prima facie case under the *McDonnell Douglas* method, the Court must consider the evidence as a whole and determine whether all the relevant evidence "would permit a reasonable factfinder to conclude that the plaintiff's race . . . caused the discharge or other adverse employment action." *Ortiz*, 834 F.3d at 765. Relevant evidence includes smoking-gun evidence such as a defendant's "actual admission of discriminatory intent." *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 879 (7th Cir. 2016) (citing *Mullin v. Temco Mach., Inc.*, 732 F.3d 772, 776 (7th Cir. 2013)). Circumstantial evidence, such as evidence that the employer's stated reasons for terminating the plaintiff were pretextual, is also relevant. *See Coleman*, 667 F.3d at 852. All the "evidence belongs in a single pile and must be evaluated as a whole" to determine discriminatory intent. *Ortiz*, 834 F.3d at 766.

There is no smoking gun evidence. Plaintiff alleges only a single specific incident, the bathroom incident, committed by an unidentified perpetrator. Although Plaintiff's role changed, his pay remained the same, and Plaintiff fails to refute Defendant's explanation that the decision to terminate the third shift was an independent business decision made before the bathroom incident and enacted before the HR complaint was made. (*See* Dkt. 34 at 13 ¶¶ 10–12.) Moreover, the undisputed evidence shows that Defendant made a serious effort to identify the individual involved in the bathroom incident. Aside from this, Plaintiff offers few specifics, and

13

none arise to the level of an actionable race-based discrimination claim. Taking the evidence as a whole, Defendant is entitled to summary judgment on Counts I and II.

### B.     Race-Based Hostile Work Environment (Title VII) (Count III)

In Count III, Plaintiff alleges that he suffered pervasive racial harassment. (Dkt. 1 ¶¶ 47–53.) To survive summary judgment on a Title VII hostile work environment claim, Plaintiff must demonstrate that " '(1) [he was] subject to unwelcome harassment; (2) the harassment was based on [his] race; (3) the harassment was so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability.' " *Walker v. City of Markham*, 676 F. Supp. 3d 623, 632 (N.D. Ill. 2023) (quoting *Johnson*, 892 F.3d at 901). As to the third element, a court must consider "whether the conduct was severe or pervasive–which depends on 'the severity of the allegedly discriminatory conduct, its frequency, whether it is physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance.' " *Id.* (quoting *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840 (7th Cir. 2009)).

Plaintiff argues that the use of the N-word as a racial slur, even once, can warrant liability under Title VII, and that the bathroom incident alone is therefore sufficient to establish a hostile work environment.[8] (*See* Dkt. 39 at 13 (citing *Scaife*

---

[8] Plaintiff briefly echoes allegations from his complaint (*e.g.*, Dkt. 1 ¶¶ 17–19) that he more-generally heard the N-word used by coworkers. (Dkt. 39 at 12.) Plaintiff admits, however, that he is unable to identify any individual who made these comments. (Dkt. 40 ¶ 11.) Plaintiff accordingly relies on the bathroom incident to survive summary judgment. (*See* Dkt. 39 at 12–13.)

*v. Dep't of Veterans Affairs*, 49 F.4th 1109, 1116 (7th Cir. 2022)). Although Plaintiff is correct that the egregious character of the N-word means that one-time use "can in some circumstances warrant Title VII liability," *Scaife* clarified that the totality of the circumstances test nevertheless remains the inquiry and that a Title VII plaintiff alleging one-time use of the N-word must show that the use was sufficiently severe or pervasive. *Scaife*, 49 F.4th at 1116.

In *Scaife*, the plaintiff claimed that she heard from her co-workers that a supervisor in another department (not her supervisor) called her the N-word. *Id*. But the Seventh Circuit explained that this incident was not sufficiently severe or pervasive, in part, because the plaintiff heard about the slur second-hand from a co-worker months after it was uttered. *See id. Scaife* emphasized that the position of the individual who utters the epithet is "critical to the analysis" because "a supervisor's use of a racial slur impacts the work environment far more severely than a coequal's use. *Id*. at 1116–17. Accordingly, a direct-supervisor's use of a racial slur is given more weight than a non-direct supervisor, which is in turn given "more weight in the analysis than a peer or co-equal." *Id*. at 1117.

It is a truism that use of the N-word in the employment environment is troubling. But under the inquiry that applies here, the Court must consider not just the impact of this single incident but instead the totality of the circumstances in the work environment. Under this inquiry, and in view of the record at summary judgment, Plaintiff's case falls short. Plaintiff admits that he cannot identify the individual who used the N-word in the bathroom, is not sure of the date of the

incident, and cannot identify any individual who made any other racial or derogatory comments. (Dkt. 40 ¶¶ 11, 16, 60.) Plaintiff admits that a supervisor did not commit the bathroom incident and suggests that a fellow employee is responsible. (*See id.* ¶ 15, Dkt. 39 at 13.) As *Scaife* explains, the one-time use of the N-word by a coworker, although execrable, falls into the category afforded the least weight in the totality of the circumstances analysis.

Defendant is entitled to summary judgment because a single instance in which a coworker uses a racial slur "is certainly insufficient to plausibly allege a hostile work environment." *Tucker v. Ettleson Hyundai, LLC*, No. 19 C 4334, 2019 U.S. Dist. LEXIS 204708, at *5 (N.D. Ill. Nov. 25, 2019) (citing *Sanders v. Village of Dixmoor*, 178 F.3d 869, 869 (7th Cir. 1999)); *see also Nichols v. Mich. City Plant Plan. Dept.*, 755 F.3d 594, 601 (7th Cir. 2014) ("[W]hile referring to colleagues with such disrespectful language is deplorable and has no place in the workforce, one utterance of the n-word has not generally been held to be severe enough to rise to the level of establishing liability."); *c.f. Gates v. Bd. of Educ. of the City of Chicago*, 916 F.3d 631, 637–40 (7th Cir. 2019) (finding that it was sufficient to state a hostile work environment claim where a supervisor made three offensive statements, which included the N-word, but that "[i]f the only evidence of racial harassment [plaintiff] had was a *co-worker's* use of the three epithets . . . [,] we would likely reach a different conclusion in this case.")

Plaintiff also cites no evidence to suggest that Defendant is liable for the bathroom incident. An employer is only liable for a coworker's statement "if the

employer 'knew or should have known about such harassment and failed to take steps to remedy it.' " *Burrell v. UPS, Inc.*, 163 F. Supp. 3d 509, 523 (N.D. Ill. 2016). If neither Plaintiff nor any deponent can identify the perpetrator, Defendant cannot reasonably be expected to have known about the harassment. Moreover, Defendant took steps to remedy the situation, as the undisputed evidence shows that Defendant investigated and reviewed the relevant video camera footage. (Dkt. 40 ¶¶ 58–63.)

Finally, Plaintiff's more general issues with his employment do not rise to the level of a severe and hostile work environment. For instance, Plaintiff states that he would overhear Hispanic co-workers use the N-word around him. (Dkt. 39 at 9.) Plaintiff admits that none of this was reported to Defendant, indicating that Defendant had no reason to know of these remarks. (Dkt. 40 ¶¶ 19–21.)

Plaintiff also complains that he was unable to communicate in meetings because they were conducted in Spanish. (Dkt. ]1 ¶¶ 22–24.) Plaintiff, however, admits that Defendant's policy is to conduct employee meetings in both English and Spanish. (Dkt. 40 ¶ 66.) The parties dispute the extent to which the meetings were held in English and whether Defendant's supervisor conveyed the meeting information to Plaintiff in English. (*Id.* ¶¶ 28, 66.) But this does not rise to the level of a hostile work environment. Plaintiff admits that Velazquez would meet with him after meetings to answer his questions and provide Plaintiff with further explanations if needed. (*Id.* ¶ 67.) Further, the evidence is insufficient for a jury to find that the predominant use of Spanish was racially motivated, as opposed to a function of the fact that most employees were Hispanic and presumably spoke

17

Spanish. (Dkt. 39 at 8–9.)

### C.    Retaliation (Title VII) (Count IV)

In Count IV Plaintiff brings a claim for retaliation under Title VII, alleging that Defendant retaliated when he complained about the alleged discriminatory conduct. (Dkt. 1 ¶¶ 54–62.) To survive summary judgment, a plaintiff's Title VII retaliation claim must present sufficient evidence to create a question of fact as to whether he: (1) engaged in a statutorily protected activity; (2) suffered an adverse employment action; and (3) there is a but-for causal connection between the two. *See Kotaska v. Fed. Express Corp.*, 966 F.3d 624, 632 (7th Cir. 2020). A plaintiff's alleged protected activity "must be specifically identified." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014). Plaintiff fails to show both an adverse employment action and but-for causation. For the reasons described above, the undisputed facts show that Plaintiff did not suffer an adverse employment action and that the purported demotion was not connected to Plaintiff's discrimination complaint. (*See supra* Part A.1).

Plaintiff finally argues he "was so stressed due to the racially discriminatory actions against him at work" that he suffered a stroke. (Dkt. 39 at 14–15.) Although Plaintiff's medical condition is certainly regrettable, Plaintiff provides no medical evidence connecting the purported demotion to his stroke. (*See* Dkt. 44 at 10–11; Dkt. 40 ¶ 69.)

### IV.    CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted.

SO ORDERED in No. 23-cv-01921.

Date: January 6, 2025

_____
JOHN F. KNESS
United States District Judge